## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **HAMEEDULLAH AMINI AIRAJ,**<br>[Address filed under seal pursuant to LCivR 5.1]<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF STATE,**<br>2201 C Street NW<br>Washington, D.C. 20520,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____ |

## COMPLAINT

1.      This action arises from the denial in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2014), of Plaintiff Hameedullah Amini Airaj's request for documents.  Mr. Airaj seeks injunctive and other appropriate relief for the release of records requested from Defendant the United States Department of State ("Defendant") which Defendant has improperly withheld.

2.      Specifically, Mr. Airaj, a former field interpreter for the United States Armed Forces in Afghanistan who is now in grave danger because of that service, seeks disclosure of records pertaining to Defendant's denial of Mr. Airaj's applications for the Chief of Mission ("COM") approval that is a prerequisite to filing an application for a Special Immigrant Visa ("SIV") for resettlement through the United States Refugee Admissions Program.

3.      Defendant has acknowledged both Mr. Airaj's dire need for the requested documents and its possession of those records but nonetheless has repeatedly refused to make a full release of the needed records, in violation of FOIA and related federal regulations.

4.      The withholding of the requested information is particularly glaring because the supporting commendations delivered to Defendant by officers in the United States Armed Forces with whom Mr. Airaj served as a translator during U.S. military operations in Afghanistan between 2007 and 2012 uniformly and unequivocally confirm that Mr. Airaj meets all of the criteria to receive COM approval.

5.      Without the requested information, Mr. Airaj cannot determine if Defendant's denials of his requests for COM approval were made in error or in violation of federal law and Defendant's own policies, and he cannot take steps to address and correct any such errors.

6.      It is widely acknowledged that Defendant has mismanaged the SIV program through lengthy delays and unwarranted denials of deserving individuals who placed themselves in extreme personal danger to assist United States forces in Afghanistan.

7.      Defendant's illegal denial of Mr. Airaj's request appears to be yet another manifestation of Defendant's disregard for the responsibilities delegated to it by Congress when it created the SIV program – a disregard that could cost Mr. Airaj his life.

## JURISDICTION AND VENUE

8.     This Court has both subject matter over this action and personal

jurisdiction over Defendant pursuant to 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(1)(D) and 28

U.S.C. § 1331.

9.     Venue is appropriate under 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(5) and 28

U.S.C. § 1391.

## PARTIES

10.     Mr. Airaj is an Afghan national who served with United States Armed

Forces in Afghanistan from 2007 to 2012 as a field interpreter.  As a result of his work on

behalf of the United States Armed Forces in Afghanistan, he now faces extreme and

imminent danger to his life and safety to such an extent that he lives in hiding and in

constant fear of the Taliban and its agents.

11.     Defendant is a department of the Executive Branch of the United States

Government and is an "agency" within the meaning of 5 U.S.C. § 552(e).

12.     Upon information and belief, Defendant is the record-keeper for

documents contained in the records of the Refugee Processing Center, including any

information from Mr. Airaj's full Worldwide Refugee Admissions Processing System

("WRAPS") file, and therefore is in possession and control of the records requested by

Mr. Airaj which are the subject of this action.

## BACKGROUND

13.     In 2007 Mr. Airaj was hired by Mission Essential Personnel ("MEP"), a

private contractor providing linguistic services to the United States Armed Forces in

Afghanistan, as a field interpreter and translator for U.S. and Coalition Forces. Mr. Airaj

was initially stationed in Farah province with U.S. Marine Unit 2/7, an infantry company that was frequently ambushed by hostile forces including the Taliban while Mr. Airaj was assigned to it.  Mr. Airaj thus often found himself in the middle of deadly bombing attacks and firefights.

14.     In 2009, while Mr. Airaj was working with U.S. Marine Unit 2/7, a member of the Taliban whom Mr. Airaj and his unit confronted told Mr. Airaj that he recognized Mr. Airaj, that he would remember Mr. Airaj's face, that the Taliban would one day find Mr. Airaj, and that it would kill him.

15.     In 2010, while Mr. Airaj was on a mission with a unit from U.S. Forward Operating Base ("FOB") Lion, their vehicle rolled into farmland adjacent to the road.  A man who claimed to own the property approached and began furiously arguing with the Company when it sought to pay compensation for any damage.  Recognizing Mr. Airaj as an interpreter for U.S. forces, the man threatened to kill Mr. Airaj if he ever saw Mr. Airaj again.

16.     Later that year, Mr. Airaj discovered that same individual standing in a guard uniform at the front gate of the base.  When he learned that the man had been hired by a company contracted to provide security for FOB Lion, Mr. Airaj informed the Sergeant Major about the earlier incident and the threats made by the man. The Sergeant Major confirmed the man's identity and had him removed from the base.  While being escorted from the base, the man again threatened to kill Mr. Airaj.

17.     After being evicted from the base, the man, who was later determined to be a probable Taliban agent, began to spread awareness of Mr. Airaj's identity and service on behalf of the United States throughout the region in an attempt to ensure Mr.

Airaj's death.  Upon information and belief, the man also discovered and disseminated Mr. Airaj's phone number, as he later called Mr. Airaj several times to inform him that Mr. Airaj would be found and killed.

18.     Fearing constantly for his own and his family's safety, Mr. Airaj began to take additional precautions in the field.

19.     In 2012, Mr. Airaj was asked by MEP to travel by public van over a long distance to an assignment in the especially volatile and dangerous Khost province. Several interpreters had been killed along the same road on that route several days earlier due to lack of adequate protection.  Because MEP would not provide an armed escort during transport or provide Mr. Airaj with a safer means of transport than a public passenger van, Mr. Airaj determined that it was unsafe for him to travel as directed. MEP would not change the travel instructions or permit Mr. Airaj to take a different assignment at the time, and it has not given Mr. Airaj any further assignments since then.

20.     Without the protection of working at a military base, Mr. Airaj has been forced into hiding.

21.     Members of the Taliban continue to search for him, and to interrogate and harass his family and friends.  In 2013, Taliban insurgents murdered the cousin of Mr. Airaj's father.  They severed his arms and discarded his limbs in the desert as a form of debasement.  The Taliban told Mr. Airaj's family to consider the act a warning and that it would do the same to Mr. Airaj when its members found him.

## MR. AIRAJ's APPLICATIONS FOR COM APPROVAL AS A
## PREREQUISITE TO FILING AN SIV APPLICATION

22.      The SIV program was first authorized by Congress in the National

Defense Authorization for Fiscal Year 2008.  Pub. Law 110-181, 122 Stat. 3.  The criteria

for those individuals who qualify for the program are described in the Afghan Allies

Protection Act of 2009, Pub. Law 11-8, 123 Stat. 807 (codified as note to 8 U.S.C.

§ 1101) (the "AAPA").  It was extended most recently by the Emergency Afghan Allies

Extension Act of 2014, Pub. Law 113-160, 128 Stat. 1853 (codified as note to 8 U.S.C.

§ 1101).  As Defendant admits in its publications concerning the program, the SIV

program was created specifically to provide eligibility for United States immigration and

permanent residency status to individuals who, like Mr. Airaj, have placed themselves at

risk in service for U.S. forces in Iraq and Afghanistan.  *See generally* Department of

State, *Special Immigrant Visas for Afghans - Who Were Employed by/on Behalf of the*

*U.S. Government* (2015), *available at*

http://travel.state.gov/content/visas/english/immigrate/types/afghans-work-for-us.html.

23.      COM approval is a prerequisite for an individual to apply for an SIV.  *See*

AAPA § 602 (b)(2)(D).

24.      Mr. Airaj applied for COM approval in order to apply for an SIV in 2011

and again in 2012.  Each application was accompanied by strong supportive

commendations from former commanding officers in the United States military.

25.      Defendant denied Mr. Airaj's applications for COM approval.  It gave no

explanation for these denials other than to state that unidentified "derogatory

information" had been associated with Mr. Airaj.

26.     In 2013, Mr. Airaj sought the aid of pro bono counsel through the Iraqi

Refugee Assistance Project ("IRAP"), an organization dedicated to helping qualified

Afghan and Iraqi individuals apply for SIVs or other appropriate relief.

27.     IRAP referred Mr. Airaj to the undersigned counsel and members of the

University of Pennsylvania School of Law's IRAP chapter.  Working with this counsel,

Mr. Airaj prepared another application for COM approval and also sought information

regarding the still-unidentified "derogatory information".

### DEFENDANT DENIES MR. AIRAJ'S FOIA REQUESTS AIMED AT DISCOVERING WHAT "DEROGATORY INFORMATION" BARRED HIS APPLICATION FOR COM APPROVAL

28.     On January 30, 2014, Mr. Airaj submitted a request to Defendant under

FOIA for all documents contained in the records of the Refugee Processing Center,

including any information from Mr. Airaj's full WRAPS file.

29.     On February 20, 2014, Defendant acknowledged receipt of Mr. Airaj's

request and assigned it Request No. F-2014-02262.

30.     On April 27, 2014, Mr. Airaj requested emergency expedition of his FOIA

request, citing his immediate and dire need to apply for (and receive) COM approval to

pursue an SIV because of the ongoing threat to his life and safety and the miserable living

conditions Mr. Airaj had been forced into as a result of that threat.

31.     On May 6, 2014, Defendant acknowledged Mr. Airaj's compelling need

and granted emergency expedition of Mr. Airaj's request.

32.     Notwithstanding Defendant's grant of expedition and the express diligence

requirements of the FOIA, it took seven additional months and repeated written and oral

inquiries from Mr. Airaj's counsel before Defendant belatedly responded on December 16, 2014 to Mr. Airaj's FOIA request.

33.     Defendant's tardy response, which was improperly backdated to November 24, 2014 to disguise the extent of Defendant's delay, provided only a handful of documents that Mr. Airaj himself had submitted to Defendant in support of his previous applications for COM approval.  The response did not include any documents related to Defendant's decision to deny Mr. Airaj's earlier requests for COM approval and instead asserted that such records were exempted from disclosure under the FOIA by section 222(f) of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), relating to information contained in the records of Defendant pertaining to the issuance and refusal of visas and permits to enter the United States.

34.     Defendant's exemption claim is baseless – its denials of COM approval had barred Mr. Airaj from ever applying for a visa, so Mr. Airaj's file could not have included any records pertaining to issuance or refusal of a visa.  Nothing in the FOIA, the Immigration and Nationality Act, or any other lawful statute or regulation exempted the records pertaining to Defendant's denials of COM approval.

35.     On January 9, 2015, Mr. Airaj appealed Defendant's decision to withhold the records relating to the denials of COM approval to Defendant's Appeal Review Panel pursuant to 22 C.F.R. § 171.52.

36.     On January 13, 2015, Defendant acknowledged its receipt of Mr. Airaj's appeal.

37.     The Appeals Review Panel is required by statute and regulation to complete its review and issue a decision within 20 business days of receipt of the appeal. *See* 5 U.S.C. § 552(a)(6)(a) and 22 C.F.R. § 171.5.

38.     Other than Defendant's acknowledgment on January 13, 2015 of receipt of the appeal, Mr. Airaj has received no correspondence whatsoever from Defendant regarding his appeal or any other matter.

39.     Because well over twenty business days have passed since Defendant received Mr. Airaj's appeal, Defendant is deemed to have denied that appeal in addition to substantively denying Mr. Airaj's request under the FOIA.

40.     Mr. Airaj has exhausted his administrative remedies with respect to Defendant's denial of his FOIA request.

41.     Moreover, 22 C.F.R. § 171.52 expressly provides that judicial review is available for a final decision of the Appeals Review Panel.

42.     Mr. Airaj has a right to obtain the information he first requested 15 months ago on January 30, 2014.

43.     There is no legal basis for Defendant's denial of Mr. Airaj's right to information in Defendant's custody and possession regarding the denials of COM approval.

44.     Defendant has wrongfully withheld agency records requested by Mr. Airaj.

45.     Mr. Airaj is entitled to injunctive relief from this Court requiring the prompt disclosure and release of the requested records.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. Airaj prays that this Court:

      A.     Order Defendant Department of State to provide all records responsive to Mr. Airaj's January 30, 2014 FOIA request to Mr. Airaj;

      B.     Order Defendant Department of State to process all FOIA requests and appeals at issue in this action, including any that may be filed in the future, in an expedited fashion;

      C.     Order such other preliminary and injunctive relief as may be appropriate;

      D.     Award reasonable costs and attorneys' fees as provided in 5 U.S.C. §§ 552(a)(4), 552a(g)(2)(A) and 28 U.S.C. § 2412(d);

      E.     Expedite this action pursuant to 28 U.S.C. § 1657(a); and

      F.     Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  May 8, 2015

John L. Cuddihy
D.C. Bar No. 472715
cuddihyj@ballardspahr.com
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
(202) 661-2200

    and

Carl G. Roberts (DC Bar No. PA0054)
cgroberts@ballardspahr.com
Christopher T. Cognato (PA ID No. 306505)
*(pursuant to LCvR 83.2(g))*
cognatoc@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
(215) 665-8500

*Pro Bono Attorneys for Plaintiff*
*Hameedullah Amini Airaj*